Judgment reversed and new trial granted, costs to abide the final award of costs.

---

EDWARD FISHER, Respondent, *v.* JAMES H. STOUT and Others, Appellants, Impleaded with Another.

*Transfer of his business by a debtor to a creditor — when it is not fraudulent as to his other creditors — what is a sufficient change of possession — misappropriation of money by the debtor left in charge of the business — expectation by the creditor that the debtor would repurchase the business.*

One Hamblen, a grocer doing business in New Rochelle, who was indebted to one Fisher, a blacksmith living in the village of Tuckahoe, executed a bill of sale of his stock in trade to Fisher in consideration of a cash payment of $200 and the cancellation of the indebtedness. After the delivery of the bill of sale Fisher notified the owner of the premises in which the property specified therein was situated that he would pay the rent thereafter accruing; he filed the bill of sale in the town clerk's office and also notified dealers who had sold goods to Hamblen that he would thereafter be personally responsible for the purchase price of the goods sold for use in the business, and paid bills therefor outside of the receipts of the business; he made a contract with Hamblen by which the latter was to conduct the business as his agent for a salary, and he procured the name "C. Hamblen" to be removed from the outside of the store and the bank account to be changed from "C. Hamblen" to "C. Hamblen, Attorney."

*Held,* that, in the absence of evidence that Hamblen was insolvent at the time the bill of sale was executed or that the consideration mentioned therein was inadequate or that Fisher knew that Hamblen had any other creditors than himself, the bill of sale was not fraudulent as to Hamblen's creditors;

That there was a change in the possession of the chattels specified in the bill of sale and a *bona fide* assumption by Fisher of the proprietorship of the business;

That evidence that Fisher did not receive all the moneys which as proprietor of the business he should have received, did not establish fraud on the part of Fisher in the absence of proof that he was cognizant thereof;

That an expectation on the part of Fisher that Hamblen would ultimately repurchase the property from him did not transform the bill of sale into a mortgage.

APPEAL by the defendants, James H. Stout and others, from a. judgment of the Supreme Court in favor of the plaintiff, entered in. the office of the clerk of the county of Westchester on the 15th day of September, 1900, upon the report of a referee.

*William O. Campbell*, for the appellants.

*Lincoln G. Backus*, for the respondent.

Judgment affirmed, with costs, on the opinion of H. B. B. STAPLER, Esq., referee.

All concurred, except HIRSCHBERG, J., dissenting.

The following is the opinion of HENRY B. B. STAPLER, referee :

HENRY B. B. STAPLER, Referee :

This is an action brought by the plaintiff against Addison Johnson, as sheriff of Westchester county, to replevin certain chattels situated in a store located in the village of New Rochelle, which had been seized by him on the 9th day of June, 1897, under an execution issued upon a judgment in favor of James H. Stout. and others against one Collins Hamblen. The plaintiff, by this complaint, claims ownership of the goods levied upon, and that he was entitled to their immediate possession. The present defendants, upon their motion, were substituted in place of the sheriff, and by their answer put in issue the title of the plaintiff to the chattels so levied upon, and allege that such chattels were the property of the said Collins Hamblen, and that a certain bill of sale, executed and delivered to the plaintiff on the 11th day of December, 1895, conveying to the plaintiff certain goods therein mentioned, was fraudulent and void ; that there was no change of possession under the said bill of sale ; that the said bill of sale was a part and parcel of a scheme to defraud the creditors of the said Collins Hamblen, entered into between the plaintiff in this action and the said Collins Hamblen, and that the said bill of sale was executed with intent to defraud the creditors of the said Collins Hamblen, and, on account of such fraud, was void as against the defendants James H. Stout,. Lewis A. Stout and Howard J. Runyon, as creditors of the said. Collins Hamblen.

The evidence does not, in my opinion, show any fraudulent intent attributable to the plaintiff in the transaction which is the subject of inquiry in this case. There must have been such an intent before the transfer to the plaintiff can be held to have been fraudulent.

Says the statute, referring to fraudulent conveyances : " The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." (2 R. S. 137, § 5 ; 2 Birdseye R. S. [2d ed.] 1345, § 13.)

Says CHURCH, Ch. J., in *Jaeger* v. *Kelley* (52 N. Y. 275): " There is no evidence that he (the plaintiff) had any knowledge of the pecuniary circumstances of Lingenfelder, or that the latter owed any other than the debt which the plaintiff paid as a part consideration for the wine. Nor is the vendor's fraudulent intent sufficient. The vendee must be also implicated."

And again he says (at p. 276): " To invalidate a sale tangible facts must be proved from which a legitimate inference of a fraudulent intent can be drawn. It is not enough to create a suspicion of wrong, nor should a jury be permitted to guess at the truth." Says BROWN, J., in *Bernheimer* v. *Rindskopf* (116 N. Y. 436): " Fraud cannot be presumed. It must be proven, and if there is left room for the inference of an honest intent, the proof of fraud is wanting."

The evidence discloses no knowledge on the part of the plaintiff that Hamblen was indebted to James H. Stout & Co. prior to the time of the levy under their judgment against him for $296 on the 9th of July, 1897, one year and a half after the assumption by the plaintiff of the proprietorship of the Park Grocery ; nor does the evidence show any knowledge on the part of the plaintiff that at the time of the delivery of the bill of sale Hamblen was indebted to any person other than to the plaintiff. Nor is there any evidence that Hamblen was at that time insolvent, or that he did not have other property in addition to that purchased from him by the plaintiff. There is no evidence that the consideration of the transfer to the plaintiff was inadequate ; it included a present cash payment of $200, paid at the time of the delivery of the bill of sale to

him, and the cancellation of a clearly established indebtedness of Hamblen to the plaintiff of $700.

Says RUGER, Ch. J., in *Nugent* v. *Jacobs* (103 N. Y. 128): "The payment by the purchaser of a fair consideration upon a sale of property affords strong evidence of the good faith of the transaction, and while not conclusive upon that question, requires clear evidence of the existence of a fraudulent intent to overcome the presumption of honest motives arising from that fact."

The evidence shows that after the delivery of the bill of sale to the plaintiff he went to the owner of the premises where the property specified in the bill of sale was situated, and notified him that he had purchased the business and that he could look to him for the rent thereafter; and that he rented the said premises, and that the owner accepted him as a tenant thereof in place of Hamblen. The plaintiff, who was a blacksmith carrying on his calling in the village of Tuckahoe, then made a contract with Hamblen to manage the business as his agent, and entered into an agreement with Hamblen under which Hamblen was to manage the business for him on a weekly salary of fifteen dollars. The testimony of the plaintiff on this point was as follows: "Q. What was said about the salary? A. He (Hamblen) wanted $3, and I would not pay $3, and I said I would only give him $2.50 to run the business, as I did not understand it, and he knew all the customers; so we agreed, and he took it. Q. $2.50 a day? A. Yes; $15 a week."

The plaintiff, after the delivery of the bill of sale, went to the premises so rented by him and for the management of the business to be conducted in which he had thus made his personal contract with Hamblen, and took possession of the same and of the personal property therein situated, by notifying those who were in the store that he was the "boss," and told Hamblen to go ahead and buy and not buy too much, and to keep the bills down as much as possible; and thereafter went weekly to the said store and looked over the business to see that it was running all right, and received monthly reports from Hamblen as to its condition, and often checked him from keeping so much help, as the business was not paying.

About the time of the delivery of the bill of sale to the plaintiff the name "C. Hamblen" was removed from the outside of the store where the property specified in the bill of sale was situated, the

bank account was changed from " C. Hamblen " to " C. Hamblen, Attorney," and publicity was given to the fact that plaintiff had purchased the property specified in the bill of sale by the filing thereof in the town clerk's office of New Rochelle, and the plaintiff's personal responsibility for the purchase price of the goods thereafter sold for use in the business was established by notification to the dealers who had theretofore sold goods to Hamblen during his proprietorship of the business that the plaintiff had become the proprietor thereof.

The evidence shows that the plaintiff paid bills incurred on account of the business out of moneys other than those which were the proceeds of the business.

In view of the fact that the plaintiff resided and carried on another vocation in a different village from that in which the business of the Park Grocery was carried on, I am of the opinion that the facts of the case show that there was, under the authorities, a change to his possession of the chattels specified in the bill of sale, and a *bona fide* assumption of the proprietorship by him of the business of the Park Grocery. (14 Am. & Eng. Ency. of Law [2d ed.], 379, 381; *Knapp* v. *Smith*, 27 N. Y. 277; *Kelly* v. *Mesier*, 18 App. Div. 329; *Drury* v. *Wilson*, 4 id. 232.)

A number of books of account of the business of the Park Grocery during the proprietorship of the plaintiff were introduced in evidence by the defendant without further testimony in reference thereto, except that furnished by the witness Hamblen. The books have not been regularly closed and balanced, so that it was difficult to determine what they show. It is claimed on behalf of the defendants that, taken in connection with the testimony of Hamblen, it appears from these books that the plaintiff did not receive all the moneys which, as the proprietor of the business, he should have received.

Assuming the fact to be as claimed, there is no evidence that the plaintiff had any knowledge of this fact, or of any appropriation of the proceeds of the business to Hamblen's use, if such be the fact. The evidence clearly shows that the plaintiff's proprietorship of the business involved him in responsibilities which he was called upon meet outside of the proceeds of the business, and that he criticised Hamblen for keeping so much help, as the business was not paying.

The plaintiff evidently had entire confidence in Hamblen's faithfulness to him, and trusted him absolutely.

He resided in another village and was engaged in an entirely different occupation than that of conducting a grocery store. He testified that he examined the monthly statements that were submitted to him by Hamblen as manager of the business, and, in reply to the question, "How do you know whether they were right or wrong?" answered, "Because I don't think he'd tell me a lie about it."

Hamblen's betrayal of the trust reposed in him by the plaintiff, in the absence of other evidence or fraudulent intent on the part of the plaintiff in the matter, and of any evidence that he was cognizant of misappropriations of moneys by Hamblen due to the plaintiff, furnished no evidence of fraud on the part of the plaintiff. (*Havens* v. *Exstein*, 31 N. Y. St. Repr. 43.)

After a careful consideration of all the evidence in the case I am of the opinion that the plaintiff, in the acquisition of the property specified in the bill of sale and in his assumption of the proprietorship of the business of the Park Grocery, acted in good faith and with no intent to defraud the creditors of Collins Hamblen.

It is further claimed on behalf of the defendants that, even if no fraud has been shown, still the title to the goods levied upon must be held to have been in Hamblen on the date of the levy, on the ground that certain answers of the plaintiff, appearing in his testimony in the case, show that the transaction between the plaintiff and Hamblen was one securing Hamblen's debt to Fisher, and that the bill of sale must, therefore, be regarded as a mortgage, and not having been refiled, ceased to have any validity as a mortgage.

In answer to the question, "What did he say and what did you say," plaintiff answered, "I said I'd take it if he agreed to pay me back." But there is no evidence as to what Hamblen said in reply to this proposition, nor that he assented to it, while the testimony of Mr. Noxon, the lawyer, as to what transpired at the time the bill of sale was delivered clearly established an agreement of sale assented to by both parties.

Mr. Noxon testified: "Q. Was there anything said at that time prior to the execution and delivery of the bill of sale, with regard to the consideration by Mr. Fisher? A. Yes, sir. Q. What was that conversation? A. Mr. Fisher said that Hamblen owed him $700.

I think that was the figure, and that he had agreed to sell him the contents of the store if Fisher would give him $200 in cash and cancel the indebtedness. Q. What was said at the time by Hamblen? A. Hamblen said about the same thing. It was in explanation to me why there was only $200 given when the consideration was $900. He was to give $200 in cash and cancel the indebtedness."

There is no evidence of any other contract by which Hamblen agreed that the debt should be canceled, and that he should remain liable therefor, nor do I find any facts from which the existence of such an agreement can be inferred. Statements of Fisher, not shown to have been acquiesced in by Hamblen, cannot override the actual agreement as evidenced by the written contract entered into in pursuance of an agreement shown to have been assented to by both parties.

Other testimony of the plaintiff, relied upon on behalf of the defendants, was that upon his cross-examination, where the plaintiff testified: " Q. You trusted Collins Hamblen with this business after he had been in debt to you many years for moneys he promised to pay, did you? A. Yes. Q. You still trusted him with your business at New Rochelle? A. I thought he was going to redeem — Q. And you were going to let him have the business back? A. Yes; I would have sold it to him. Q. It was so understood between you, that if he could pay up he could have the business back? A. There was never a word said about it that I can remember. I am certain about it."

Here there is no evidence of the assent of Hamblen to a contract continuing his liability for the debt, the cancellation of which the testimony of Mr. Noxon shows was one of the considerations of the bill of sale — but at most only an expectation on the part of the plaintiff that Hamblen would buy back the business from the plaintiff. What was said in *Brackett* v. *Harvey* (91 N. Y. 214) would seem to be here applicable. In this case FINCH, J., says (p. 224): " We must not forget that it is an agreement which is to be proved. The mere expectation of one party or the other is not enough; it must be the conscious, concurrent assent of both. It must be proved and not merely suspected, for it is an attempt to establish fraud where innocence is to be presumed and to contradict

by parol the actual written agreement of the parties and reduce that to a mere cover and artifice."

Nor is any evidence of an agreement on the part of Hamblen that he should remain liable to the plaintiff to be found in the further testimony of the plaintiff referred to on behalf of the defendants. The testimony is as follows : " Q. Now what agreement did you make with Mr. Hamblen after you got the bill of sale with regard to his buying goods to replenish the stock. What did you tell him ? A. I told him to go ahead and buy and not buy too much — to keep the bills down as much as possible. Q. What agreement did you make with him with regard to the proceeds of the business ? A. He was to give me so much if it was paying, and, if it didn't pay, I was to let it run to pay the debt."

It would seem to be clear that the " debt " here referred to is one arising out of the possible non-remunerative condition of the business, and it would seem from this testimony that, after the plaintiff had purchased the property and had assumed proprietorship of the business, an arrangement was made by which, in the event of the business proving profitable, Hamblen was to receive, in addition to his fifteen dollars a week salary, a share in the profits of the business, and, if the business did not prove profitable, that the plaintiff was not immediately to close it out, but was to continue the business until, at least, it could be made to work out any debt incurred by him in relation thereto. By this arrangement Hamblen secured a continuance of his personal contract with the plaintiff for a weekly salary of fifteen dollars in the event of the business not paying, and the plaintiff secured the continued services of Hamblen in the effort to make the business work out such debt.

But however this may be, two things are clear from this testimony, *first*, that the plaintiff's relationship to the business was one of ownership and control thereof, and, *second*, that the debt referred to was one not to be paid by Hamblen, but was to be paid out of the proceeds of the business.

I find, therefore, no evidence of any agreement on the part of Hamblen and the plaintiff which can be held to have the effect of superseding the agreement that the debt of Hamblen to the plaintiff should be canceled as one of the considerations of the transfer of the property in the bill of sale.

In view of the testimony of Mr. Noxon, above referred to, and in view of the acts of the plaintiff in assuming responsibility for the business and acknowledging that responsibility by the payment of the bills of the business outside of the receipts from the business, by the assumption of responsibility for the rent of the premises where the property transferred to him was situated, by his entering into a personal obligation to Hamblen providing for his employment as the agent of the plaintiff in the management of the business, by taking possession of the property transferred to him under the bill of sale, and by the cash payment of $200, I am of the opinion that the transaction was a sale of the property and not a mortgage of it and that the evidence is not sufficient to show that there was any agreement entered into between the plaintiff Hamblen which can be held to have the effect of transforming the bill of sale into a mortgage.

It follows from the above considerations that the title to the property levied upon and the right of possession thereto was, at the time of the levy, in the plaintiff, and that the plaintiff is entitled to a judgment awarding to him the possession of such property.